| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. BR 9004-1 |
| David W. Fassett (DWF 1636)<br>John J. Roberts (JJR 3831)<br>ARSENEAULT & FASSETT, LLP<br>560 Main Street<br>Chatham, NJ 07928<br>(973) 635-3366<br>fasset@af-lawfirm.com<br><br>McCARRON & DIESS<br>Blake A. Surbey<br>4530 Wisconsin Avenue, N.W., Suite 301<br>Washington, DC 20016<br>(202 364-0400<br>Fax: (202) 364-2731<br>Bsurbey@mccarronlaw.com<br>Pro Hac Vice Pending<br><br>*Attorneys for J. Ambrogi Food Distribution, Inc.* |
| IN RE: GARCES RESTAURANT GROUP, INC., D/B/A GARCES GROUP, et al.,<br>Debtors. |

Case No.: 18-19054 (JNP)

Chapter 11

Judge Jerrold N. Poslusny, Jr.

**OBJECTION OF J. AMBROGI FOOD DISTRIBUTION, INC. TO DEBTORS' MOITON FOR INTERIM AND FINAL ORDERS UNDER SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SETTING A FINAL HEARING**

COMES NOW, J. Ambrogi Food Distribution, Inc., ("Ambrogi"), by its undersigned counsel, and files its objection (the "Objection") to *Debtors' Motion for interim and Final Orders Under Sections 361 and 363 of the Bankruptcy Code (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Production, (C) Modifying the Automatic Stay, and (D)*

- 1 -

*Setting a Final Hearing* [D.E. 4] (the "Cash Collateral Motion"). In support of its Objection, Ambrogi respectfully states as follows.

### I.    BACKGROUND

1. Ambrogi is a licensee under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* ("PACA"), as amended.

2. Debtor Garces Restaurant Group is and was subject to licensure under the PACA at all pertinent times herein, having received aggregate quantities of produce in excess of 2,000 pounds in a day and purchased more than $230,000.00 worth of produce in a year. *See In re Magic Restaurants, Inc.*, 205 F.3d 108, 117 (3d Cir. 2000) (restaurants that purchase wholesale or jobbing quantities of produce and in excess of $230,000.00 per year are "dealers" under 7 U.S.C. § 499a(b)(6)).

3. Prior to the Petition Date, Ambrogi supplied Debtors with wholesale quantities of fruits and vegetables, which Debtors accepted, worth the principal amount of $54,198.78 plus interest and attorneys' fees,[1] for which it has not been paid. *See* Ambrogi's PACA license information and representative copies of Ambrogi's unpaid invoices, which are voluminous, attached as **Exhibits A,**[2] **and B**, respectively. Ambrogi preserved its rights as a beneficiary of the statutory trust created under the PACA, 7 U.S.C. § 499e(c)(2), by placing the language on its invoices as allowed by Section 499e(c)(4) of PACA. *See* **Exhibit B**.

---

[1] *See Middle Mountain Land and Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220 (9th Cir. 2002); *Country Best v. Christopher Ranch, L.L.C.*, 361 F.3d 629 (11th Cir. 2004) (unpaid sellers of produce who include contractual provisions for attorneys' fees and interest in their agreements to sell perishable agricultural commodities, and who properly preserve PACA trust benefits, are entitled to trust protection for those additional expenses incurred).

[2] PACA license information is published by the USDA's Agricultural Marketing Service at http://apps.ams.usda.gov/pacasearch/default.aspx.

4. The Cash Collateral Motion seeks to use cash and assets that are expressly impressed with the PACA Trust, as discussed further herein, to pay its ongoing operating expenses as well as debts owed to American Express, interest on the debt to M&T Bank and as much as $590,000.00 in "Restructuring and Professional Fees & Costs," and grant adequate protection for M&T Bank (M&T) in the form of a super-priority interest in Debtors' assets ahead of all other creditors while Ambrogi and other similarly situated PACA trust beneficiaries remain unpaid.[1]  Cash Collateral Motion, at ¶ 26; Exhibit A to Cash Collateral Motion, D.E. 4.

## II. **OBJECTIONS**

5. The Cash Collateral Motion does not address Ambrogi's rights to prompt payment as a beneficiary of the PACA trust; nor is there adequate protection given to Ambrogi for the diminution of its PACA trust assets while cash collateral, which is a PACA trust asset, is being used to fund both operating and non-operating expenses. Moreover, the relief requested attempts to subrogate Ambrogi's status as a PACA trust beneficiary by granting a superior priority status to M&T in direct violation of the express purposes of the PACA. Ambrogi's PACA trust interests must be preserved and protected by segregation of assets equal to the total amount of the prepetition PACA trust claim, including interest and attorneys' fees, owed by Debtors to Ambrogi, plus additional funds necessary to pay other PACA trust beneficiaries.

---

[1] At least one other PACA licensee filed a lawsuit against Garces Restaurant Group, Inc. in the Eastern District of Pennsylvania alleging breach of the trust and non-payment of $80,315.52 under the Perishable Agricultural Commodities Act. *First Choice Food Distributors v. Garces Restaurant Group, Inc., et al.*; 2:18-cv-926-CDJ.

### III. ARGUMENT

### A. The PACA Trust

6. The statutory PACA trust requires a produce receiver to hold in trust as a fiduciary its produce-related assets, which includes the produce itself, products derived therefrom, as well as any receivables or proceeds from the sale thereof, until full payment is made to the seller. 7 U.S.C. § 499e(c)(2). *See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 136 (3rd Cir. 2000); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *Tom Lange Co. v. Kornblum & Co., (In re Kornblum & Co..)*, 81 F.3d 280 (2nd Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010 (6th Cir. 1993) (noting that assets and proceeds from produce should be held in trust until payment in full). The establishment of the trust is an unequivocal declaration that produce-derived assets are distinct and must be used to pay produce suppliers.

7. "This trust is created by operation of law upon the purchase of such goods, and the produce buyer is the statutory trustee." *Tanimura & Antle, Inc.* 222 F.3d 132, 136. Dealers subject to PACA must maintain the PACA Trust for the benefit of their unpaid suppliers, sellers or agents until full payment has been made. Id.

#### 1. *All of Debtors' Assets are Impressed with the PACA Trust*

8. While Section 499e(c)(2) defines the *corpus* of the trust as all produce, including all inventories of food or other products derived from produce, and receivables or proceeds from the sale of produce or its product, under common law trust principles, the trust extends to any other assets, including real property, acquired from a commingled account. *Sanzone-Palmisano Co.*, 986

F.2d at 1013; *In re Kornblum & Co., Inc.*, 81 F.3d at 286-287; *In re Atlantic Tropical Market Corp.*, 118 B.R. 139, 142-43 (Bankr. S.D. Fla. 1990).[1]

9. The trust arises automatically by operation of law, and it remains in continual existence from the produce buyer's first produce purchase until all produce sellers have been paid in full. *In re Kornblum & Co., Inc., supra.*

10. In the bankruptcy context, the Debtor has the very difficult burden of establishing which, if any, assets are *not* subject to the PACA trust. *See Sanzone-Palmisano*, 986 F.2d at 1014; *In re Atlantic Tropical Market*, 118 B.R. at 142; *In re Richmond Produce*, 112 B.R. 364, 368 (N.D. Cal. 1990) ("The unpaid sellers are not required to trace and the trust arises immediately upon delivery."). The Debtor must prove either: (1) no PACA trust existed when the asset was acquired; or (2) although a PACA trust existed at the time, the asset was not acquired with trust assets; or (3) although a PACA trust existed when the asset was acquired, and the asset was acquired with trust funds, all unpaid sellers of produce were paid in full prior to the transactions involving the unpaid PACA trust creditors herein. *In re Kornblum & Co., Inc.*, 81 F.3d at 287.

11. The *Sanzone-Palmisano* court characterized this burden as nearly impossible to carry once trust proceeds have been commingled with non-trust proceeds.

> "We hold that a purchaser, or PACA debtor, has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. . . . [I]n the conventional case, where the produce was sold at a gross profit, the proceeds were commingled in a general fund, and the general fund was used to buy more inventory, the PACA debtor will be unable to meet its burden, and the produce supplier will prevail. We believe that this is the outcome that Congress intended."

*Sanzone-Palmisano*, 986 F.2d at 1014.

---

[1] The commingling of trust assets does not defeat the trust. 7 C.F.R. § 46.46(b).

12. Thus, a PACA debtor does not meet its burden of showing that the trust is inapplicable to non-produce inventory, or other assets, merely by establishing that the other items are not produce, or that only a certain percentage of the PACA debtor's inventory consists of produce. *Sanzone-Palmisano Co.*, 986 F.2d at 1013; *In re Kornblum & Co., Inc.*, 81 F.3d at 286-87; *In re Atlantic Tropical Market Corp.*, 118 B.R. at 142-43. Instead, all assets of a produce debtor are presumed to be impressed with the PACA trust. *In re Atlantic Tropical*, 118 B.R. at 142.

### 2. *Full Payment Promptly Required*

13. Congress also specifically directed that the failure to maintain the trust and make *full payment promptly* to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4). Agricultural merchants, dealers and brokers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 C.F.R. § 46.46(d)(1).

### 3. *PACA Trust Creditors Prime All Other Creditors, Including Secured Lenders*

14. Furthermore, Congress stated that secured financing arrangements, in which produce proceeds are used as security and diverted from the suppliers to lenders, are against the public interest and a burden on commerce, and that the purpose of this law is to remove this burden on commerce. 7 U.S.C. § 499e(c)(1); *see Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374 (3d Cir. 1994); *E. Armata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590 (S.D.N.Y. 1995); *A&J Produce Corp. v. CIT Group/Factoring, Inc.*, 829 F. Supp. 651 (S.D.N.Y. 1993).

15. "PACA's trust provision gives the unpaid supplier an interest in the trust corpus superior to the interest of any other lien or secured creditor." *In re Magic Restaurants, Inc.*, 205 F.3d at 112 (*Consumers Produce, 16 F.3d at 1379; In re W.L. Bradley Co., Inc., 75 B.R. 505, 509*

*(Bankr. E.D. Pa. 1987) (quoting In re Prange Foods, Corp., 63 B.R. 211, 214 (Bankr. W.D. Mich. 1986))*. The PACA trust provision "effectively vitiates a lender's security interest in trust assets held by produce purchases vis a vis unpaid produce suppliers." *Consumers Produce*, 16 F.3d at 1379.

16. Notably: secured lenders may be required to disgorge trust funds they receive when the PACA trust has been breached. *Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374, 1379 (3d Cir. 1994); *Nickey Gregory Co. LLC v. Agricap, LLC*, 597 F.3d 591, 594 (4th Cir. 2010); *Consumers Produce Compnay, Inc. of Pittsburg v. Fredericktown Produce Co.*, 2015 U.s. Dist. LEXIS 19869 (W.D. Pa, February. 19, 2015).

### 4.    *PACA Trust Assets Are Not Property of the Estate*

17. "If a buyer or receiver declares bankruptcy ..., trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust beneficiaries have been paid." 49 Fed. Reg. at 45738. *See generally In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997); *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Asinelli, Inc.*, 93 B.R. 433 (M.D.N.C. 1988); *In re Carolina Produce Distributors, Inc.*, 110 B.R. 207 (W.D.N.C. 1990); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bankr. N.D. Tex. 1985); *In re Milton Poulos, Inc.*, 94 B.R. 648 (Bankr. C.D. Cal. 1988). "That the corpus of a trust is not property of the estate is so widely accepted as to be beyond dispute." *In re Fresh Approach, Inc.*, 51 B.R. 412, 419 (Bankr. N.D. Tex. 1985); *see also* 11 U.S.C. § 541(d).[1]

---

[1] 11 U.S.C. § 541(d) states in pertinent part: "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest,...becomes property of the estate...only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

18. When a produce supplier is not paid, it is entitled to immediate relief in the form of segregation and payment of trust assets. *See Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990); *Tanimura & Antle, Inc., supra* (reversing District Court and granting a preliminary injunction in favor of PACA trust beneficiaries); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D. Cal. 1990); *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 50 (N.D. Fla. 1989); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997) (debtor required to immediately pay trust assets to the PACA trust creditors); *In re W.L. Bradley, Inc.*, 75 B.R. 505 (E.D. Pa. 1987) (automatic stay lifted and immediate payment of trust proceeds required to the PACA trust creditors); *In re Monterey House, Inc.*, 71 B.R. 244, 249 (S.D. Tex. 1986) (PACA defendant ordered to disburse unpaid amounts held in trust, and retain remainder in segregated, interest-bearing account to be used to pay PACA creditors' interest and attorneys' fees). In a case such as this, where Debtor has commingled the trust assets with non-trust assets, the trust extends to all of Debtor's inventory gained from a commingled account, *Sanzone-Palmisano Company*, 986 F.2d at 1013-14, and to any other assets acquired with PACA trust funds. *In re Kornblum & Co., Inc.*, 81 F.3d at 286; *In re Atlantic Tropical Market Corp.*, 118 B.R. at 142.

19. Because PACA trust assets are outside of the bankrupt's estate, PACA trust beneficiaries "take complete priority in payment as to all the assets of the debtor, *ahead of the claims of creditors who have valid security interests, ahead of the administrative costs and expenses incurred in [bankruptcy] court*, and ahead of all other priority and general creditors." *In re Super Spud, Inc.*, 77 B.R. 930, 932 (M.D. Fla. 1987) (emphasis added); *see In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 965 (5th Cir. 1980); *see also In re Fresh Approach, Inc.*, 51 B.R. 412, 419 (N.D. Tex. 1985); *C.H. Robinson v. Alanco Corp.*, 239 F.3d 483 (2d Cir. 2001)

(payment to other creditors, including to PACA debtor's counsel, prior to payment to PACA trust creditors is not permitted under PACA).

### B.  Objections to the Cash Collateral Motion

20. The relief requested by Debtors provides adequate protection to M&T Bank in the form of a super priority interest in and replacement liens on all of debtors' assets, and allowances for substantial weekly operating and non-operating disbursements, including to the "Amex Loan Settlement Repayment," "M&T Interest," "Capital Expenditures," and "Restructuring Professional Fees & Costs," with a projected thirteen week total of $590,000.00, but it provides no relief or protection to Ambrogi. Such relief is improper because Ambrogi's interest as a PACA trust creditor has priority over the interests of all other creditors, including secured creditors.

21. Debtors' cash proceeds are indisputably within the scope of the PACA trust, and it is expressly contrary to PACA to allow such funds to be paid to non-PACA creditors—even secured creditors—while PACA trust creditors are unpaid. 7 U.S.C. §499e(c)(1) and (2); *Sanzone-Palmisano Company*, 986 F.2d at 1012-13.

22. In essence, Debtors are requesting that they be permitted to continue dissipating trust assets through their continued operations and payments, with no provision made for payment of Ambrogi's prepetition PACA trust debt. This is precisely the kind of risk that Congress decreed produce suppliers would not have to assume by enacting the trust provision of PACA. It is contrary to federal law to reorganize using PACA trust assets. Such trust assets must be segregated and "freely available" to satisfy sellers of produce.

### III. RELIEF REQUESTED

23. Debtor have not demonstrated how they will adequately protect Ambrogi's, or any other similar creditor's, PACA trust interests. *See* 11 U.S.C. §363(o). Ambrogi requests that Debtors be required to set aside sufficient monies to pay Ambrogi's PACA trust claim and the PACA trust claim of any other PACA trust beneficiaries in a segregated account to replace the PACA trust assets Debtors have already dissipated and to ensure sufficient funds are available to pay Debtors' PACA trust creditors.[1]

24. The propriety of this remedy is demonstrated by the Order issued by the United States Bankruptcy Court for the District of Delaware in the case of *In re Fleming Companies, Inc., et al*, Case No. 03-10945 (MFW), wherein the Court granted the same relief that PACA Creditors are seeking herein, and required the Debtors to set aside $26 million for the benefit of the Debtors' PACA Creditors which were granted a replacement lien in the final financing order. Similarly, the United States Bankruptcy Court for the Southern District of New York granted the same relief and required the Debtors to set aside $30 million for the benefit of the Debtors' PACA Creditors in the case of *In re Winn Dixie Stores, Inc., et al.*, Case No. 05-11063-RDD (subsequently transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division). The adequate protection requested in this case is considerably less, but just as vital to protect Ambrogi's rights under the PACA trust.

25. Anything less than an actual segregation and timely payment of PACA trust assets contravenes the statutory and case law on this issue, and frustrates Congress' intent that PACA

---

[1] Ambrogi is entitled to payment of the full amount due under the PACA trust, which is the principal amount its PACA claim, plus interest and attorneys' fees as "sums owing in connection" with the PACA trust debt. *See Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 709 (2d Cir. 2007).

beneficiaries and their trust rights remain free from the burdens and delays inherent in bankruptcy. Failure to do so will likely lead to Ambrogi being left with no PACA trust assets, no means of securing payment and no other adequate remedy.

### IV.   CONCLUSION

26.   For the foregoing reasons, Ambrogi respectfully requests that the Debtors be required to segregate sufficient funds to pay Ambrogi's PACA trust claim and the PACA trust claims of any other similarly situated PACA trust beneficiaries, and be directed to promptly pay this prepetition PACA trust debt.

ARSENEAULT & FASSETT, LLP

By:   s/ David W. Fassett

s/ John J. Roberts

and

MCCARRON & DIESS

By:   s/ Blake A. Surbey

*Attorneys for J. Ambrogi Food Distribution, Inc.*

Dated: May 3, 2018

### CERTIFICATE OF SERVICE

I certify that on this 3rd day of May, 2018, a copy of the foregoing was served on all parties and counsel so registered to receive notice via the CM/ECF system and that this Objection will be served according to the service list when so approved.

By:   s/ David W. Fassett

Dated: May 3, 2018